UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KYLE SIMMONS, | Case No. 3:19-cv-00382-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| NEVADA SYSTEM OF HIGHER EDUCATION, and THE BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, and TRUCKEE MEADOWS COMMUNITY COLLEGE, and DOES I-X, inclusive, | |
| Defendants. | |

Defendants, Nevada System of Higher Education ("NSHE"), the Board of Regents of the Nevada System of Higher Education ("the Board"), and Truckee Meadows Community College ("TMCC"), (collectively "defendants"), move this court to dismiss plaintiff's complaint in its entirety. ECF No. 14. Plaintiff, Kyle Simmons, opposed the motion (ECF No. 24), to which defendants replied (ECF No. 25). First, because plaintiff and defendants agree that TMCC should be dismissed, the court grants defendants' motion to do so. Second, because the plaintiff has failed to allege facts to support his Title VII claim, the court grants defendants' motion to dismiss plaintiff's first cause of action. Finally, because NSHE and the Board are state entities immune from suit under the Eleventh Amendment, the court grants defendants' motion to dismiss plaintiff's state law claims—causes of action two through five.

///

1

## I.     BACKGROUND

In 2014, Simmons was hired as a "full time, tenure track" Humanities professor at TMCC. ECF No. 1 ¶¶ 8-9. His first year teaching (the 2014-2015 school year), Simmons received an "Outstanding" overall ranking on his two Tenure Probation Reports, and an "Excellent 2" ranking (the highest possible ranking for a Humanities professor) on his Annual Performance Evaluation. *Id.* ¶¶ 10-13. His contract was renewed for a second year of teaching (2015-2016), during which he again received an "Outstanding" overall ranking on his two Tenure Probation Reports, and an "Excellent 2" ranking on his Annual Performance Evaluation. *Id.* ¶¶ 14-18. His contract was renewed for a third year of teaching (2016-2017), and he again received an "Outstanding" overall ranking on his two Tenure Probation Reports, and an "Excellent 2" ranking on his Annual Performance Evaluation. *Id.* ¶¶ 19-23. Simmons contract was then renewed for a fourth year of teaching (2017-2018). *Id.* ¶ 24.

During a mandatory faculty meeting on August 17, 2017, Simmons alleges that he was "grabbed and pulled against his will by TMCC Vice President Marie [Murgolo]" while she attempted to get him to dance. *Id.* ¶¶ 26, 28. Believing this conduct to be sexual harassment, Simmons filed a complaint against her with the TMCC Human Resources Office on August 23, 2017. *Id.* ¶¶ 27-28. Human Resources closed this complaint on August 31, 2017. *Id.* ¶ 29.

Plaintiff alleges that he was again sexually harassed on September 22, 2017, when TMCC Human Resources Director Veronica Fox, "approached him while he was talking to a colleague . . ., came between him and the colleague, stood very close to him, and touched him in a manner which made him feel very uncomfortable, and asked him if he needed anything." *Id.* ¶ 30. On September 30, 2017, plaintiff filed a sexual harassment claim against Director Fox and Vice President Murgolo. *Id.* ¶ 31. The Human Resources Office opened an investigation on October 5, 2017. *Id.* ¶ 36. Plaintiff was informed by Human Resources on November 9, 2017, that TMCC President Karin Hilgersom had closed the investigation. *Id.* ¶ 45.

On October 2, 2017, Dean Jill Channing performed a "Classroom Observation" of Simmons, ranking his performance "Outstanding" overall, which included 5 "Outstanding" marks, 2 "Good" marks, and 1 "Satisfactory" mark. *Id.* ¶ 32. Plaintiff alleges that he had never been ranked

"Satisfactory" on any prior TMCC classroom observation evaluation. *Id.* ¶ 33. Simmons provided comments to Dean Channing regarding this mark on October 12, 2017, and met with her on October 13, 2017. *Id.* ¶¶ 37-38. Plaintiff alleges that during this meeting, Dean Channing "promised" she would sign his "Tenure Probation Report for his Tenure Binder." *Id.* ¶ 39.

Professor Lindsay Wilson performed a "Classroom Evaluation" on October 4, 2017, and gave Simmons all "Outstanding" marks. *Id.* ¶ 34. On October 4, 2017, Simmons was also given his Tenure Probation Report, on which he received an "Outstanding" rank, was rated "Excellent" by his Tenure Committee, and recommended for tenure. *Id.* ¶¶ 35, 40.

On October 31, 2017, Dean Channing informed plaintiff that she could not sign his Tenure Probation Report, and on December 1, 2017, denied his tenure application, "thereby recommending that plaintiff Simmons be denied tenure" by DSHE and TMCC. *Id.* ¶¶ 44, 46. Plaintiff alleges that pursuant to the collective bargaining agreement, if Dean Channing had concerns about plaintiff, she was required to "'document and notify the Tenure Committee Chair and the tenure-track candidate in writing in a timely and appropriate manner regarding the nature of the perceived deficiencies or other concerns.'" *Id.* ¶ 47. Plaintiff alleges that Dean Channing failed to do so. *Id.* ¶ 48.

On January 4, 2018, plaintiff was informed by letter from President Hilgersom that his tenure application had been denied "based on the recommendation of Dean Jill Channing." *Id.* ¶49. Upon receiving this letter, plaintiff requested President Hilgersom and Dean Channing recuse themselves from deciding his tenure application because of the roles they had concerning the sexual harassment complaints he had filed. *Id.* ¶50.

On January 9, 2018, plaintiff was informed that his contract would not be renewed and that he would be "laid off/ discharged" on January 8, 2019. *Id.* ¶51. On this same day, President Hilgersom informed plaintiff he would no longer be teaching in the classroom but would be "given special assignments" to conduct at his home. *Id.* ¶ 52. Plaintiff alleges that this change in assignment violated Article 4, Section 4.3(2) of the collective bargaining agreement. *Id.* ¶ 53. On January 11, 2018, President Hilgerson informed plaintiff that she would not be recusing herself but would consider his request an appeal of his tenure denial. *Id.* ¶ 55.

On February 26, 2018, plaintiff filed a grievance pursuant to the collective bargaining agreement, alleging that President Helgersom and Dean Channing violated Articles 2 and 4.3 of the collective bargaining agreement. *Id.* ¶ 56. Plaintiff filed 2 additional grievances with TMCC pursuant to the collective bargaining agreement—one on March 12, 2018, and the other on June 27, 2018—and on June 29, 2018, sent NSHE Chancellor Thom Reilly an email regarding these grievances with TMCC, which was not entertained. *Id.* ¶¶ 58-60.[1]

Plaintiff then filed 4 complaints with the TMCC Human Resources Office: (1) on July 16, 2018, alleging retaliation for making his sexual harassment claims; (2) on August 6, 2018, alleging discrimination; (3) on August 27, 2018, alleging Title IX retaliation/ discrimination; and (4) on August 28, 2018, alleging Title IX retaliation and discrimination. *Id.* ¶¶ 61, 63, 64-65. Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission ("NERC") on October 12, 2018. *Id.* ¶ 66(1).[2] Simmons was ultimately discharged from his employment on January 11, 2019. *Id.* ¶ 66(2).

Simmons received a "Notice of Right to Sue" from the EEOC on April 15, 2019 (dated April 9, 2019), and filed the at issue Complaint on July 5, 2019. *Id.* ¶ 67. Simmons alleges five causes of action in his Complaint: (1) violation Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended, for discrimination based on gender and retaliation based on allegations of sexual harassment; (2) breach of employment contract; (3) breach of the covenant of good faith and fair dealing existing in plaintiff's employment contract; (4) breach of contract between defendant and TMCC-NFA, (breach of the collective bargaining agreement); and (5) breach of the covenant of good faith and fair dealing contained within the collective bargaining agreement which covered plaintiff's position as a Professor of Humanities at TMCC. *See id.*

///

///

///

---

[1] Plaintiff's Complaint includes a typographical error: beginning on page 13, paragraph 59 is listed twice. Therefore, the court's citation here includes both the first and second paragraph 59.

[2] Plaintiff's Complaint includes a typographical error: beginning on page 15, paragraph 66 is listed twice. Therefore, the court references the first paragraph as ¶ 66(1) and the second as ¶ 66(2).

4

## II. LEGAL STANDARD

**Motion to Dismiss Pursuant to Federal Civil Procedure Rule 12(b)(6)**

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* FED. R. CIV. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Id.* at 680-81 (quoting Twombly, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S.*

*Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

**III. DISCUSSION**

**A. Plaintiff's motion to amend his Complaint at paragraph 4 is granted.**

Plaintiff found a typographical error in his Complaint and in conjunction with his Response, moved the court to allow him to amend paragraph 4 to correct this error.[3] ECF No. 24. In paragraph 4 of the Complaint, the plaintiff referenced "28 U.S.C. § 1337," when he meant to reference "28 U.S.C. § 1367." The rest of paragraph 4 refers to supplemental jurisdiction, which is properly referenced as 28 U.S.C. § 1367. In defendants' motion to dismiss, they discuss plaintiff's second through fifth causes of action as "supplemental state claims brought pursuant to 28 U.S.C. § 1367." ECF No. 14 at 12. Therefore, such a typographical error does not appear prejudicial to either party. Seeing good cause to allow plaintiff to amend his Complaint, the court grants plaintiff's motion.

**B. TMCC is dismissed from the suit.**

Defendants argue that because TMCC is not a legal entity, only a community college operated by NSHE, it is not a proper party and must be dismissed. Plaintiff does not object to dismissing TMCC from the suit; therefore, defendants' motion is granted.

**C. Defendants' motion to dismiss plaintiff's first cause of action, violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, for discrimination based on gender and retaliation based on his allegations of sexual harassment,[4] is granted.**

   i. <u>The court declines to rule at this stage on the timeliness of the EEOC charge or whether plaintiff properly exhausted his administrative remedies.</u>

Pursuant to 42 U.S.C. § 2000e-5(e)(1), "a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination." *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081-82 (9th Cir. 2006). "However, if the claimant first 'institutes

---

[3] While this is not the proper procedure for filing a motion to amend a Complaint, *see* LR 2-2(b) and LR 15-1, the court will allow it here.

[4] Plaintiff's first cause of action does not appear to allege a claim of hostile or abusive work environment based on sexual harassment, and therefore, the court does not discuss such arguments.

6

1 proceedings' with a state agency that enforces its own discrimination laws—a so called 'deferral' state—then the period for filing claims with the EEOC is extended to 300 days." *Laquaglia v. Rio Hotels & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 199). Nevada is such a deferral state, and the parties agree that 300-days is the proper limitations period. *See id.*

Plaintiff alleges that he simultaneously filed his charge with NERC and the EEOC on October 12, 2018. ECF No. 1. ¶66(1). Defendants argue that plaintiff has alleged two distinct acts of sexual harassment: one occurring on August 17, 2017, and the other occurring on September 22, 2017. Therefore, under the 300-day rule, plaintiff must have filed his EEOC charge for the August incident by June 13, 2018, and by July 19, 2018, for the September incident. Since plaintiff's EEOC charge was filed almost 3 months after the latest deadline, defendant argues that plaintiff's EEOC charge is untimely. Plaintiff argues that his charge was timely because he marked "Continuous Action," thereby, alleging conduct that occurred within the 300-day period (after December 15, 2017).

Plaintiff did not attach the charge to his Complaint. Plaintiff does refer to the EEOC charge in paragraphs 66(1) and 67 of his Complaint, in which he alleges that he filed the charge, the date on which the charge was filed, and the date he received his Notice of Right to Sue letter. ECF No. 1 at 15. Defendants then attached the charge to their motion to dismiss as Exhibit 2. *See* ECF No. 14-1, Ex. 2. If the court were to consider "evidence outside the pleadings, it must normally convert the 12(b)(6) motion to a Rule 56 motion for summary judgment, and must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Certain materials may be considered without converting the motion, including, "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *Id.* at 908.

Here, defendants did not request the court take judicial notice of the charge, and it was clearly not attached to plaintiff's Complaint. While the charge is referenced in the Complaint, the court does not find it has been incorporated by reference, such that the court can properly rely on the charge without converting the instant motion to one for summary judgment. *See id.* (documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the

document or the document forms the basis of the plaintiff's complaint."). Without the charge itself, the court cannot properly make a timeliness determination at this stage, and therefore, denies defendants' motion to dismiss on this ground.

Likewise, defendants' argument that the court should not consider plaintiff's September 2017 allegation of sexual harassment because it was not contained in the charge is similarly improper at this stage. Generally, for the court to have subject matter jurisdiction over plaintiff's Title VII claims, the plaintiff must have exhausted his EEOC administrative remedies prior to bringing the claim in federal court. *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). However, while "failure to file an EEOC complaint is not a complete bar to district court jurisdiction, . . . [t]he jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). The district court will still have "jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). In order to make such a determination, the court must review the charge itself. Therefore, because the charge is not properly before the court at this time, defendants' motion to dismiss on this ground is denied.

> ii. <u>The court grants defendants' motion to dismiss plaintiff's claim for retaliation because plaintiff fails to make a prima facie showing.</u>

Under Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because* he has opposed any practice made an unlawful employment practice by this subchapter, or *because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added). To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a protected activity, (2) that he subsequently experienced an adverse employment action, and (3) that a causal link exists between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)). The third prong requires a showing of but-for causation, "not the lessened

causation test stated in § 2000e-2(m)." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Opposition to an unlawful employment practice is a protected activity if it "refers to *some* practice by the employer that is allegedly unlawful." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (emphasis in original). "It is not necessary, however, that the practice be demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice." *Id.* (citing *Sias v. City Demonstration Agency*, 588 F.2d 692, 695-96 (9th Cir. 1978). "The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard—one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994).

While "[c]ourts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition,'" *Crown Zellerbach Corp.*, 720 F.2d at 1013, it is clear to the court that plaintiff's alleged complaints filed with the TMCC Human Resources Department on August 23, 2017, and September 30, 2017, constituted "opposition" to what plaintiff perceived to be unlawful sexual harassment. Although plaintiff need not demonstrate that the opposed conduct was unlawful sexual harassment, the facts as alleged must show that his opposition was based on an objectively reasonable belief that the conduct was unlawful. It is certainly reasonable for plaintiff to believe that Title VII protects him from sexual harassment in the workplace; however, it is not objectively reasonable for a person in plaintiff's position to believe the conduct he has alleged was sexual harassment. The Merriam-Webster Online Dictionary (2020) defines "sexual harassment" as "uninvited and unwelcome verbal or physical behavior of a sexual nature especially by a person in authority toward a subordinate."[5] Plaintiff alleged that he complained to TMCC of two incidents of sexual harassment—(1) when Vice President Murgolo grabbed plaintiff and attempted to pull him on to the dance floor; and (2) when HR Director Fox touched him in a way that made him feel uncomfortable and asked if he needed anything from her. While it is clear

---

[5] Merriam-Webster provides that the first known use of this phrase, as defined herein, was in 1971.

9

to the court the conduct as alleged and complained of was unwelcome, and by two individuals in authority, plaintiff has failed to allege that it was *sexual in nature*. Accordingly, nothing contained within these allegations support a finding that his opposition was based on an objectively reasonable belief that the conduct was unlawful. Therefore, because plaintiff has not sufficiently alleged facts to support the first prong of his retaliation claim, the court grants defendants' motion to dismiss plaintiff's first cause of action on this ground.

   iii. <u>Plaintiff fails to allege facts sufficient to establish a plausible claim for gender discrimination under Title VII.</u>

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To establish his prima facie case for Title VII discrimination based on gender, plaintiff must show (1) he belongs to a protected class, (2) he was qualified for his position; (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)).

Plaintiff alleges facts sufficient to establish the first three elements of his prima facie case: (1) he is a member of a protected class. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women."). (2) He alleges sufficient facts to support that he was qualified for the position—he was recommended for tenure by his entire tenure committee, he received an "Outstanding" overall ranking on each of his Tenure Probation Reports over a three year period, and he received an "Excellent 2" ranking on his Annual Performance Evaluations over a three year period.[6] And (3) that he suffered adverse employment action. Simmons alleges that he was denied tenure, removed

---

[6] Defendants attached a letter to Simmons from President Hilgersom regarding her recommendation to deny tenure in support of their arguments for why plaintiff was not qualified for his position. *See* ECF No. 14-1, Ex. 1. Similarly, Simmons attached exhibits to his response in support of his argument that he was qualified for tenure. *See* ECF No. 24 at 27-33. Such consideration of either parties' documents would convert defendants' motion to dismiss to one for summary judgment. The court declines to do so, and therefore, these documents were not considered in coming to the court's conclusion on this element.

10

from teaching in the classroom and given special assignments to be worked on off campus, and ultimately terminated from his position with TMCC. However, plaintiff has failed to allege any facts to support the fourth element of his claim—that individuals outside his class were treated more favorably. Therefore, the court grants defendants' motion to dismiss plaintiff's first cause of action on this ground.

### D. Plaintiff's state law claims—causes of action two through five—are dismissed because NSHE and the Board are state entities entitled to Eleventh Amendment immunity.

Defendants argue that plaintiff's state law claims—causes of action (2) breach of employment contract; (3) breach of the covenant of good faith and fair dealing existing in plaintiff's employment contract; (4) breach of contract between defendant and TMCC-NFA, (breach of the collective bargaining agreement); and (5) breach of the covenant of good faith and fair dealing contained within the collective bargaining agreement which covered plaintiff's position as a Professor of Humanities at TMCC—are barred because NSHE and the Board are state entities immune from suit pursuant to the Eleventh Amendment. *See* ECF No. 14. Plaintiff argues that the court has supplemental jurisdiction over plaintiff's state law claims because they are "so related" to plaintiff's first cause of action brought under the court's federal question jurisdiction, 28 U.S.C. § 1331. *See* ECF No. 24.

The Eleventh Amendment bars suits "in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "In the absence of a waiver by the state or a valid congressional override, '[u]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.'" *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (quoting *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989)).

"Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment." *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) (citing NRS 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.")). And the Ninth Circuit has made clear that "28 U.S.C. § 1367

does not abrogate state sovereign immunity for supplemental state law claims." *Stanley v. Trustees of California State University*: 433 F.3d 1129, 1133-34 (9th Cir. 2006). The Court reasoned:

> "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (internal quotation marks and citation omitted).
>
> . . .
>
> The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which is silent as to sovereign immunity. The statute is a far cry from the "unmistakably clear" language required for abrogation. Additionally, there is no indication that Congress intended to exercise its powers under Section 5 of the Fourteenth Amendment by enacting section 1367; the statute only addresses the jurisdiction of federal courts, which Congress regulates through its Article I powers.

433 F.3d 1129, 1133-34 (9th Cir. 2006).

Defendants argue that NSHE and the Board are state entities entitled to immunity under the Eleventh Amendment. The court agrees. In coming to this conclusion, the court considers the following five factors in determining whether an entity is an arm of the state entitled to immunity: (1) "whether a money judgment would be satisfied out of state funds;" (2) "whether the entity performs central government functions;" (3) "whether the entity may sue or be sued;" (4) "whether the entity has the power to take property in its own name or only the name of the state;" and (5) "the corporate status of the entity." *Mitchell*, 861 F.2d at 201. The first factor, whether the judgment would impact the state treasury, is the most critical factor. *Alaska Cargo Transp. v. Alaska R.R. Corp.*, 5 F.3d 378, 380 (9th Cir 1993) (citations omitted).

"[T]he University system operates as a branch of the Nevada State government and . . . the state is obligated to provide sufficient funds for its operation . . . ." *Johnson v. Univ. of Nev.*, 596 F.Supp. 175, 178 (D. Nev. 1984). In *Johnson*, the court found that the University of Nevada and its Board of Regents were state entities entitled to immunity under the Eleventh Amendment. *Id.* In reaching this finding, the court noted, "[s]upport and maintenance of the university system comes from the direct legislative appropriation from the general fund and land grants originally given to the State of Nevada in 1862 by the Federal government." *Id.* (citing NRS 396.370).

Similarly, in *Simonian v. University and Community College System*, a case dealing with TMCC, the Nevada Supreme Court held that the University and Community College System was a state entity for purposes of the Federal Claims Act because the System is (1) "subject to the

approval and control of the state government;" (2) treated to some extent "as a state entity within the Nevada Revised Statutes;" and (3) "through its Board, in possession of some sovereign powers." 128 P.3d 1057, 1061-62 (Nev. 2006) (citation omitted).

The "University of Nevada System" and the "University and Community College System" referred to in *Johnson* and *Simonian*, respectively, now known as NSHE, includes universities and community colleges, controlled and managed by the Board. *See* NRS 396.020. As the courts recognized in *Johnson* and *Simonian*, pursuant to Nevada law, the general fund provides funding for NSHE, and any damages awarded against NSHE would be chargeable to the State. Further, because NSHE operates as a branch of the Nevada State government, it performs government functions. Therefore, the court finds that NSHE and the Board operate as a branch of the Nevada State government and are state entities immune from suit pursuant to the Eleventh Amendment.

Courts of this District have consistently come to the same conclusion. *See Lucey v. Nev. ex rel. Bd. of Regents of Nev. Sys. Of Higher Educ.*, Case No. 2:07-cv-00658-RLH-RJJ, 2007 WL 4563466, at *8 (D. Nev. Dec. 18, 2017); *Risos-Camposano v. Nev. Sys. Of Higher Educ.*, Case No. 3:14-cv-00181-RCJ-VPC, 2014 WL 5503128, at *6-7 (D. Nev. Oct. 29, 2014) (finding that while NSHE is generally immune from suit under the Eleventh Amendment, the State waived its immunity when it removed the case to federal court);[7] *Adams v. McDonald*, Case No. 3:06-cv-00707-LRH-VPC, 2009 WL 2835109, at *2-3 (D. Nev. Aug. 28, 2009). And the Ninth Circuit has concluded likewise. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 n.17 (9th Cir. 2004) ("It is also therefore unnecessary to consider the University System's contentions that it cannot be joined as a defendant because, as a sub-entity of the State of Nevada, it is immune from suit under the Eleventh Amendment[.]"). The court declines to deviate from this precedent. Accordingly, plaintiff's state law claims—causes of action two through five—are dismissed.

///

///

---

[7] The court notes that this is not at issue in this case—plaintiff filed his complaint with this court, it was not removed.

13

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff's motion to amend his Complaint at paragraph 4 (*see* ECF No. 24) is **GRANTED**.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's complaint (ECF No. 14) is **GRANTED.** TMCC is dismissed from this suit, and plaintiff's first through fifth causes of action are dismissed.

IT IS FURTHER ORDERED that plaintiff is granted leave to file an amended complaint within **30 days** from the date of entry of this order if he believes he may cure the deficiencies identified in this Order.

IT IS SO ORDERED.

DATED this 6th day of February, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

14